# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00324-CR

**Juan Francisco Rodriguez-Linares, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 427TH JUDICIAL DISTRICT
### NO. D-1-DC-13-300805, HONORABLE JIM CORONADO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Juan Francisco Rodriguez-Linares guilty of aggravated sexual assault with a deadly weapon, aggravated assault family violence—bodily injury with deadly weapon, and assault family violence with strangulation. *See* Tex. Penal Code §§ 22.01(a)(1), (b)(2)(B) (family violence), .02(a)(2) (aggravated assault), .021 (aggravated sexual assault). The jury assessed a twenty-year term in prison for the aggravated sexual assault and ten-year terms for the remaining offenses, all to be served concurrently. Appellant contends that the trial court abused its discretion by allowing an expert witness to testify about power and control in abusive relationships involving immigrants. The State contends that we should modify the judgment on the aggravated sexual assault offense to conform with the jury's finding that appellant used a deadly weapon. We will modify the judgment to add a deadly weapon finding to the aggravated sexual assault offense to conform with the jury's verdict and affirm the judgment as modified.

## BACKGROUND[1]

The victim, who testified under the pseudonym Rosa Mejia, stated that appellant forced her to have sex with him. Appellant's defense strategy depended in part on undercutting Mejia's credibility by showing her actions that are seemingly inconsistent with her claim of nonconsensual sex. The State sought to counter that strategy by establishing the circumstances that the State contends explain the apparent inconsistencies.

Both parties are immigrants, and appellant told Mejia that he was working as a detective with immigration-related responsibilities. Mejia testified that a few months into their relationship, appellant forced her to have sex with him in an incident not charged in this case. Appellant left town for most of the month after the initial assault.

When appellant returned to Austin, Mejia said she did not want him to stay with her. She testified that he told her he had weapons in his car and also that he threatened to have her deported. She relented and let him stay with her periodically for a couple more months, but then told him to leave and not return.

Mejia testified that she awoke the next day to find appellant stroking her hair and asking her why she was rejecting him. She said she asked him to leave, but he refused and grew angry. She testified that appellant told her he was going to rape her three times and that it was the last day of her life. Mejia said that, when she screamed, appellant grabbed her by the neck and then put a pillow over her face. She testified that he had sex with her twice before he gave her permission

---

[1] Appellant does not challenge the sufficiency of the evidence underlying the record, so we will recount testimony solely to provide context for the dispute over the admission of particular evidence.

2

to go to the bathroom. She jumped out the second-story window onto a roof, ran to the neighbors' home, and reported the crime.

During cross-examination, appellant's attorney asked Mejia whether she had ever had consensual sex with appellant. When she said no, he questioned her about her report to her pastor of the initial sexual encounter. Mejia denied that her motivation for the initial report to the pastor was her anger over appellant having left town immediately after possibly impregnating her. She testified that she told the pastor the encounter was nonconsensual, but said she did not tell him about the threats appellant made. When the attorney asserted that Mejia did not like appellant traveling to Dallas because he was visiting his wife, Mejia asserted that she thought he was divorced. She said she had asked to see appellant's divorce papers, but he declined to show them to her because it was so recent. The attorney asked her why, if after the first sexual encounter she no longer wanted to see appellant, she brought him to her house. Mejia testified that appellant told her that he was coming to her house regardless. The attorney also questioned why, if appellant was abusive, he consented to sleep on the couch or in her closet and why they were presented to her church as an engaged couple. Mejia testified that she was under duress. The attorney also challenged her assertion that she did not owe appellant money. He also cross-examined Mejia regarding discrepancies on details in her reports to police and on how her bedroom stayed so neat during an allegedly violent assault. She said that appellant caught her by surprise before she could struggle. The attorney further pointed out that Mejia's assertion that appellant threatened her life was not in any of her reports to police. He asserted through questions (which she denied) that appellant and Mejia argued about her failure to pay him for work he did helping her clean houses, that she was upset he had lied about his

3

marriage being over, that she was angry that he was still married, and that she was embarrassed that he was leaving her after they had been introduced to her church as a couple.

## STANDARD OF REVIEW

We review a trial court's ruling on the admissibility of evidence under an abuse-of-discretion standard. *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). The rules favor the admission of relevant expert testimony, *Ortiz v. State*, 834 S.W.2d 343, 346 (Tex. Crim. App. 1992), but relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice from its admission. *See* Tex. R. Evid. 403.

## DISCUSSION

Appellant challenges the trial court's admission of testimony from Emily LeBlanc, director of community advocacy for SafePlace, an organization that serves survivors of sexual and domestic violence. She testified about power dynamics in abusive relationships and used an exhibit entitled "Immigrant Power and Control Wheel" that lays out how one person might exert psychological power over another, especially an immigrant. Appellant contends that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice. He contends that he was unfairly prejudiced by the admission of testimony concerning the extraneous and uncharged alleged initial sexual assault. He also argues that the State cannot claim a need to rebut testimony it elicited, such as evidence about the initial sexual assault, why Mejia delayed reporting the initial assault, and why she let appellant stay at her house after the first alleged incident.

The State contends first that appellant failed to preserve this error because he failed to raise this issue in the trial court when the evidence was offered. *See* Tex. R. App. P. 33.1,

4

33.1(a)(1)(A). The point of error on appeal must comport with the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). At trial, appellant argued that the evidence was not relevant or particularly useful because the expert did not interview the victim. He also argued that the Power and Control Wheel was hearsay and not probative because it was replete with inapplicable examples and generalities. These objections do not comport with the arguments raised on appeal and therefore did not preserve his right to raise the issues presented in his brief.

Even if error were preserved, courts have found expert testimony about the effects of a cycle of violence admissible even where it is not based on knowledge of the parties before the court. *See Scugoza v. State*, 949 S.W.2d 360, 363 (Tex. App.—San Antonio 1997, no pet.); *see also Brewer v. State*, 370 S.W.3d 471, 473 (Tex. App.—Amarillo 2012, no pet.). The trial court did not abuse its discretion by deciding that LeBlanc's testimony was relevant to assess Mejia's seemingly inconsistent behavior toward someone who had sexually assaulted her based on norms for abused immigrants. Appellant's argument that such evidence improperly bolsters the victim's testimony has been rejected by the court of criminal appeals. *See Cohn v. State*, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993). We resolve appellant's sole issue in favor of the verdict.

The State requests that we modify the judgment in the aggravated sexual assault count because it does not conform with the jury's finding of a deadly weapon. When the jury charge contains an allegation that the defendant used a deadly weapon in the commission of an offense and the jury finds the defendant guilty as charged in the indictment, the jury has made a deadly weapon finding that should be included in the judgment. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). When the judgment of the trial court does not contain that deadly weapon finding, the court of appeals "has authority to reform a judgment to include an affirmative finding to make the

5

record speak the truth when the matter has been called to its attention by any source." *Id.* In this case, the jury found appellant guilty of aggravated sexual assault "as alleged within the indictment" that included an allegation that he used or exhibited a deadly weapon other than a firearm in committing the offense. Evidence in the record supports that finding. We sustain the State's sole issue on appeal.

To conform the written judgment with the jury's verdict, we modify the trial court's judgment on count one of the indictment to include a finding that appellant used a deadly weapon other than a firearm when committing the aggravated sexual assault. We affirm the judgment as modified.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Field

Modified and, as Modified, Affirmed

Filed:   July 24, 2015

Do Not Publish